**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Judge Blanche M. Manning |
| ) | |
| v. ) | Case No. 03 CR 188 |
| ) | |
| JOSE ROMERO-PEDROZA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the court on a limited remand by the Seventh Circuit Court of Appeals to determine whether this court would impose the defendant's original sentence had the Sentencing Guidelines been advisory rather than mandatory. *See U.S. v. Paladino*, 401 F.3d 471 (7th Cir. 2005). In *Paladino*, the court stated that:

> Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence with an appropriate explanation, or inform this court of its desire to resentence the defendant.

*Id.* at 484 (citation and quotation marks omitted). In making this statement, the court should obtain the views of counsel but need not require the presence of the defendant. *Id.*

On February 23, 2003, Romero-Pedroza was charged with illegal reentry of a previously deported alien who had been convicted of an aggravated felony[1] in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On May 22, 2003, Romero-Pedroza pled guilty pursuant to a written plea agreement. Romero-Pedroza had a criminal history category of four. Further, his offense level was 21 based on a base offense level of 8 plus a 16-level enhancement because he had previously been deported following a conviction of an aggravated felony that was a crime of violence[2]

---

[1] In January 1999, Romero-Pedroza was convicted of being a felon in possession of a firearm in the U.S. District Court, District of Arizona.

[2] In October 1997, Romero-Pedroza was convicted of aggravated assault in Maricopa County, Arizona, and was sentenced to nine months' imprisonment in state custody.

(U.S.S.G. § 2L1.2(b)(1)(A)). He then received a 3-level reduction for acceptance of responsibility and timely notification of his intention to plead guilty. Based on these parameters, the presentence investigation report calculated Romero-Pedroza's guideline range at 57 to 71 months, and this court sentenced him to 64 months' incarceration. On remand, Romero-Pedroza urges this court to impose a lower sentence taking into consideration the factors of 18 U.S.C. § 3553(a).

In determining whether it would impose the same sentence had the Guidelines been advisory rather than mandatory, the court has reviewed the written submissions of the parties as to this remand, the sentencing transcript, the presentence report with the associated objections, and the briefing on Romero-Pedroza's original motion for a downward departure. As required under § 3553(a), the court has considered the nature and circumstances of the offense, the history and characteristics of the defendant, the purpose for imposing the sentence,[3] the kinds of sentences available, the advisory guideline range of 57 to 71 months, and the need to avoid unwarranted sentencing disparities.

The court concludes based on its consideration of all of the relevant factors that it would impose the same sentence. The court believes that the sentence of 64 months, which falls in the middle of the range advised by the guidelines, is reasonable. The sentence of 64 months properly reflects the seriousness of Romero-Pedroza's crime and provides a proper punishment for the offense. Moreover, the court fervently hopes that it is sufficient to deter Romero-Pedroza from reentering the United States without the express permission of the Attorney General.

As to Romero-Pedroza's history and characteristics, the court notes that at the original sentencing, it denied Romero-Pedroza's motion for a downward departure, which was based in part on the financial assistance to his mother and his two children, who live in Arizona, as well

---

[3] According to § 3553(a), the sentence imposed should: (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) afford adequate deterrence to criminal conduct; (c) protect the public from further crimes of the defendant; and (d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

as his own health problems. While Romero-Pedroza invokes these same issues in his remand position paper, the court sees no basis on which to reach a different conclusion than the one reached at the original sentencing. In particular, as to his health problems, the court notes that Romero-Pedroza does not state in his position paper that he is not receiving adequate medical care.

Romero-Pedroza also points to the need to avoid unwarranted sentencing disparities based on the so-called "fast-track" program that is in place in other districts when sentencing § 1326 offenders, but not the Northern District of Illinois. In 2003 Congress formally authorized the use of fast-track programs (which had until then been operated on an ad-hoc basis) with the passage of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act (the "PROTECT Act"), which gives the Attorney General the power to authorize and set criteria for fast-track programs. *See* PROTECT Act, Pub. L. 108-21 (2003); *see also* U.S.S.G. § 5K3.1. Under this legislation, the Attorney General has created a program whereby those districts meeting certain specific criteria, including that the particular district "confronts an exceptionally large number of a specific class of offenses" or "confronts some other exceptional local circumstances with respect to a specific class of cases," receive authorization to operate a fast-track program. Because the Northern District of Illinois has not received such authorization, Romero-Pedroza may face a longer sentence than a similarly situated defendant in a fast-track district.

Although there may be situations where the disparity created by the fast-track programs warrants a sentence below the guidelines' range, this court concludes that, given the specific facts of Romero-Pedroza's case, a sentence below the guidelines is not warranted. The PSR indicates over twenty arrests and twelve convictions for Romero-Pedroza between 1991 and 2003, several involving weapons. Based on Romero-Pedroza's criminal history, the court concludes that a lower sentence is not warranted on the basis of the disparity created by the fast-track programs. *See United States v. Frias*, No. 04 CR 456, 2005 WL 1560475, at *1 (S.D.N.Y. July 1, 2005)

(relying on defendant's criminal history to reject request for below-Guidelines' sentence based on fast-track disparity); *United States v. Peralta-Espinoza*, 383 F.Supp.2d 1107, 110-12 (E.D. Wis. 2005) (recognizing that sentence below Guidelines' range may be appropriate to remedy fast-track disparity but declining to sentence below the range because defendant "re-offended upon re-entry").

      In conclusion, the court declines to impose a different sentence knowing that the guidelines are advisory.

**ENTER:**
                                                        */s/ Blanche M. Manning*
                                                        **Blanche M. Manning**
                                                        **United States District Judge**

**DATE:** December 12, 2005